Good morning, your honors. May it please the court. Melody Busey on behalf of the petitioner Maria Gonzalez-Lemus. The immigration judge and the BIA erred in their decisions to deny her application for asylum, withholding, and CAT. Now before I go into the two primary issues that this court wants to address, I want to briefly just go into the facts of the case because I do think they're very relevant to the PSG, and I'll be very brief as to the facts of the case. The petitioner is a 36-year-old citizen of El Salvador. In June of 2015, the petitioner was threatened by a gang member when he approached her at her house and asked her to pay extortion rent because she was working at a business that belonged to her sister. When she said no, she does not want to pay the extortion rent, he then subsequently told her, I will harm you, and then just left it at that. Fast forward two, three weeks later, and sometime around June of 2015, as she's coming back from working and she's going into her house, a man approaches her from behind her, puts a hand around her mouth, tells her to go in, and proceeds to rape her in the very spot that she was threatened two, three weeks prior. And then after he rapes her, he then says, if you report this to anyone or to the police, I will come back and rape your 11-year-old daughter. For those reasons is why the petitioner and her daughter eventually came to the United States. She did before, prior to coming to the United States, she did relocate to another part, I believe it was three hours away from where she originally was raped. But she ultimately felt that she was not safe. She was living in constant fear that this person or other gang members were going to come back and rape her 11-year-old daughter. Is her sister still in El Salvador? Yes, Your Honor. And has she been harmed? No, not to my knowledge. And didn't petitioner testify that she didn't know if she would be raped again if she went to El Salvador? She did testify to that fact. She couldn't say for sure that she would be raped, but it was the fact that... Right, it's a threat. Right, and the fact that she was already raped, so it wasn't an empty threat. She was already raped, she has that past trauma, and then you couple that with the fact that he said that he was going to rape her 11-year-old daughter. I mean, that is tremendous. I personally would be afraid. And so she did try relocating, and she did testify at her merits hearing that nothing happened to her when she relocated three hours away, but she was living in constant fear. I mean, she testified that she picked up her daughter from school, would take her daughter to school. She wouldn't leave her daughter alone, and they pretty much just stayed inside their house except for necessities, school, food, water. She pretty much didn't leave because she was just terrified of the thought of her daughter being raped as she was raped. So the IJ in making the Catt ruling said that the court finds it's an unsupported assumption that Respondent will be harmed in the future, and that it announced a speculation. What's the evidence that requires us to disagree with that? Well, Your Honor, first, the evidence is the fact that she was raped previously, so that establishes past persecution, and in this court... But the IJ didn't conclude that, right? The IJ family court testimony wasn't corroborated on that point. Right, Your Honor. And respectfully saying, I think that analysis, that finding was nonsensical because of the amount of evidence submitted. So on one end, the judge says... Did you raise the corroboration issue in front of the BIA? They have a footnote saying that they're not going to address it. So I will get to that point right now, Your Honor. So the government is arguing that we failed to exhaust the corroboration issue on the BIA level, but we disagree. And the main reason for that is that, in a way, the BIA conceded to that issue because in the decision, in the footnote, they state that we did not meaningfully challenge the issue of corroboration. They didn't say that... You're saying that you raised it because they conceded to it? Well, I'm saying that they already agreed that we did raise up the issue because they said that we didn't meaningfully bring it up, meaning that we didn't... Well, where did you bring it up at all? So, we did... Where is the word corroboration anywhere in Petitioner's Brief to the BIA? I believe there is one part. It's Administrative Record, I think, 26. I don't have the exact page. But there is one part where we do bring up corroboration, specifically the word. When was the BIA? You thought it was 26? 26, Your Honor. Isn't this whole thing about whether you raised corroboration or not before the BIA? And you don't know where I can find that in the record? I do have it, Your Honor. It's in my notes, but I... Okay. Well, then maybe when you get back up, you can tell me. All right. Thank you, Your Honor. But we did raise the issue of corroboration, in essence, throughout the brief. We may not have underlined it or bolded it or dedicated a whole section, as I will concede we should have. I don't know why we didn't. But we did raise up the issue of corroboration, in essence, as a whole in the brief. Just tell us what you did. Okay. So we discussed the country conditions. We discussed the Petitioner's credible testimony. That should have been a lone corroboration. I mean, this Court has held that before in other cases. In fact, you corroborated and you're saying that because rape, it's unfortunately very prevalent, correct? Correct, Your Honor. And you put that and you told them that, correct? Correct. So that corroborates what happened to her. It's not unusual to other people as well. That's corroboration, I guess, right? Correct, Your Honor. What else did you have? And then we also mentioned country condition reports, and that is a form of corroborating evidence in a form that the judge, the immigration judge, did not really take into consideration fully or completely. Kind of glanced over it and just said that there's generalized violence and crime throughout El Salvador. And so in discussing that, that is discussing corroboration. Because people normally are usually raped with an audience. Precisely. And then they're not subsequently threatened that their 11-year-old minor daughter will be raped as well. Right. After you were raped, in the very spot that you were threatened two, three weeks prior. Which I think is important to note because they made a point with that to come back and rape her in the very spot that they threatened her. Right. But to go back to Judge Rushing's point that the issue of exhaustion as it relates to the issue of corroboration, it was in essence discussed in the brief entirety. It wasn't eloquently put, I will say. We didn't put it, like I said, underneath a header, underlined it, bolded it like we normally do. But it was in whole throughout the brief. It was discussed by her credible testimony, which is corroborating evidence. It was discussed by the country condition reports, which is corroborating evidence. And it was also discussed in the affidavits, specifically the partner's affidavit. He did address the rape claim in which the immigration judge said that none of the affidavits submitted even talked about the rape claim. I will say most of them did address the petitioner's good moral character. But it's because she didn't tell anybody about the rape and she testified to that. The only person that she told was her partner, who's here in the United States. And he wrote an affidavit and mentions the rape in it. So, one, I do feel like the issue of corroboration was exhausted in the brief. Also, in the notice of appeal, it does say that the petitioner will appeal the I-589 application. The I-589 application is the asylum. And so the inference there is that we're going to appeal all the decisions of denial for that application. The reason that the petitioner couldn't be more specific in the notice to appeal is because she, as indicated in there, she did not have the actual full written decision where the judge goes in detail with why his reasons for denial. She didn't have that before her. So then she could only put that I'm going to appeal the I-589 application denial. And so why I bring that up is because there's a case that was decided last year in this court, Hernan Portillo Flores v. Garland, that specifically addresses if the notice of appeal at least says it in some way, shape, form. It doesn't have to say the magic words, but in some way says it in the notice of appeal. And then the BIA goes on to address it. Then this court indeed does have jurisdiction to hear this claim, and it was exhausted. But the BIA did not address it in your case. They addressed it. The BIA said it was waived. Right, and the footnote on, I think it was page two of the BIA's decision. The BIA did not address it in this case. But, Your Honor, on page three, I believe, of the decision, towards the end, I think it's one of the last paragraphs, the agency does briefly mention cooperation. It was as it relates to if she could reasonably relocate. The BIA said that she failed to provide any cooperating evidence on that issue. So that is, in a way, the agency preserving that issue. They may have not had a full discussion of cooperation, but they did raise it up towards the end. You're saying the agency preserved the issue, but they did not address it on the merits, correct? Or are you saying that that's... They addressed it kind of in part. So they didn't have a... It was kind of the same way we addressed it in the brief. So they addressed it in essence as well. So they put the footnote saying that we didn't meaningfully exhaust that issue. But then on page three of the decision, they go on and talk about how we failed to provide any cooperating evidence as to her being able to reasonably... Page three. Yes, Your Honor. And so all that coupled... So the fact that they did say that we didn't meaningfully challenge it, I think there's an inference there that means that we did challenge it, just not to the agency's standard. You had the evidence from the boyfriend that he wrote the letter. Yes, Your Honor. And they had that. But also in terms of cooperation, in terms of ability to move, it seemed to me under this case, she did. Because what she's saying is that she's brutally raped in her home. And then this assailant turns around to her and said, listen, you shut up because we come back. It won't be you. It'll be your 11-year-old daughter. I could not think of anything more chilling to a mother to hear that. And you say you can go someplace in the country and you're going to lose that incredible trauma of a rapist telling you I'm coming back for your 11-year-old daughter. I wonder what part of any country you could go to and ever feel safe about that. And then to that same point, Your Honor, it's El Salvador. She's from El Salvador. We are all well aware of the country conditions in El Salvador. And if we are not aware, there was numerous country condition reports submitted, almost 300 pages worth of evidence submitted indicating and explaining just how bad gang violence is in El Salvador. So even if she could move five hours away from her home, gangs are prevalent all throughout the country and not just in El Salvador but Central America as a whole. So for the judge to expect her to just move three hours away and live in peace with the threat of her 11-year-old daughter being raped, not just harmed or hurt. They threatened to rape an 11-year-old little girl. The evidence is that they grossly misunderstood the human nature of it and said that it was not meaningful cooperation. Because that's the essence of this case. They came to her home, they know where she is, and just raped her. And then to come back to your daughter and talk about this is a case, this is not where your political views, you can go someplace else where people who think like you could do that. Where can you go in that small country with all the gang violence that's not general gang violence? Here we're talking specifically she was raped. And they didn't question her credibility that she was raped, did they? No, they didn't. And in fact the immigration judge found that she was credible. She was credible. And we want to go backwards a little bit. When she first entered the United States, she had a credible fear interview and she was also found credible at that stage. And then the judge goes on and says, I must find her credible. He says something to that effect. I must find her credible even though she testified with a flat tone. And I'm really unsure as to how is that relevant because she's a rape victim. Is he trying to say that she's supposed to testify in some sort of way conforming to how all rape victims are supposed to be? I mean rape victims, it's different. Unfortunately, many of them are just silent. What was that, your honor? I'm sorry. Unfortunately, many of them are just silent. And this is why this court constantly hears asylum cases. Constantly because immigration judges are always doing this. They ignore credible testimony. They go on to find the petitioner's credible but then says that she lacks cooperating evidence. It's almost contradictory. It doesn't make sense. And then in this case in particular, she submitted an abundance of evidence. If I had to say if there was one piece of evidence missing, it would have been a police report. But she gave a reasonable explanation for that because her daughter was threatened right after she was raped, right after the petitioner was raped. And her daughter was threatened of being raped if she went and told the police. That is a reasonable explanation for why there isn't a police report. And then on top of that, she even further stated that if you report stuff to the police, oftentimes police end up missing or you find them dead. Because of the corruption in El Salvador and the commingling either police are afraid of the gangs or they work with them. And so she gave a reasonable explanation as to why a police report was lacking. And then everything else goes in her favor. She had affidavits, one from a person most close to her, her partner, that addresses the rape. It addresses it briefly, but it does address the rape. And the country conditions reports all support that there is gang violence all throughout El Salvador, especially towards women. They oftentimes just dispose of women like animals. The country conditions support it almost on the spot, Your Honors. And yet the judge goes and says there's not enough corroborating evidence. It almost seems like it was a catch-all for him to deny the claim. Your Honors, I do see that I'm running out of time and I need to address PSG. So I'm going to reserve my last five minutes so I can address PSG if you don't have any other questions. That's fine. Thank you. Good morning. May it please the Court. Arthur Rabin on behalf of the respondent, the Attorney General. In this case, the Court should dismiss in part and deny this petition for review in part. Starting with some of the jurisdictional issues, the Court does not even have to address the asylum or withholding because of exhaustion and jurisdictional issues. First of all, as to asylum, this was not a timely filed asylum application. And this Court has held it has no jurisdiction under the statute which specifically prohibits such jurisdiction to review the timeliness claim. That is, whether or not an application was filed within one year of arrival is not within this Court's jurisdiction to review. So asylum on that ground alone is off the table. Number two, the corroboration issue. All courts are very clear, including this one, that you cannot just generally raise an issue. You have to be specific, which is why the board said you didn't meaningfully raise the issue of corroboration in your brief because what they did raise in their brief, they meaningfully did, which is the issues of the one-year bar, the PSG, whether or not something was a particular social group. So what about her argument with regard to Portillo-Flores and the fact that she says she raised it in her notice of appeal, sufficiently raised it in her notice of appeal? It was not specifically raised in her notice of appeal, Your Honor, because what the notice specifically said is that it was a very broad one-sentence statement that said, Respondent desires to brief the denial of her I-589 application. That's it. That's the entirety of her claiming that she raised a claim, an illegal argument against corroboration, which is in their briefing to this Court they did. Yes, it's very well briefed, but not to the board. And the whole point of exhaustion is to allow the agency. So how do you distinguish our holding in Portillo-Flores with what happened here? Well, Your Honor, what happened here is that when you just raise a broad claim, how does that put an agency on notice of what your specific argument is to allow the agency to address it? You cannot just make a broad claim and say... Well, the agency, according to opposing counsel, did address it in their opinion. I think it's actually on page 2 where it says that she, Respondent, provided little corroboration that she could not relocate and that she was not able to identify her attackers or their gang affiliation. So arguably the BIA did address it in their opinion. Your Honor, I think the important distinction needs to be made. There's a little bit of confusion here. Under the asylum statute, there's two burdens of proof. One is the burden of going forward, putting forth sufficient evidence, credible evidence, corroborated if necessary. That is your burden of production. Then you have the burden of persuasion of meeting the elements of asylum. That is whether or not there was past persecution or well-founded fear on account of a protected group with a nexus that caused the mistreatment. So we're talking about two different things. So what the board was actually addressing was the relocation issue, which is part of her prima facie case for asylum, not her burden of production to meet the immigration judge's concerns about her credibility. What the judge said, look, I find in several footnotes that her testimony is inconsistent. And I'm specifically talking here about footnotes on page two of the immigration judge's decision, page 50 of the record, as well as he noted that her testimonial demeanor was very poor and that it needed to be corroborated. The judge indicated that her inappropriate laughing when discussing some of the most traumatic parts of her testimony seemed to be, and this is on page five of the immigration judge's decision, page 53 of the record, she had a flat effect, little emotion about the graphic and traumatic events, and the respondent laughed when asked about her fear of returning to El Salvador because she was afraid. Under those circumstances, the immigration judge felt that, as the statute requires him to do, to ask, well, okay, this seems to be a little bit inconsistent here. And maybe he, even though he didn't issue a full-on, I don't believe you, adverse credibility finding, what he did say was, I think under these circumstances, corroboration would be required. And that he discussed fully over one and a half pages. But that, none of his discussion and those reasons were actually addressed in either the notice to appear or the brief to the board. So we would argue that is not exhausted. So now, because corroboration deals with her claim for asylum and withholding, neither of those are before the court and should be dismissed for lack of exhaustion. But briefly to move on, if the court does deem that the issue was corroborated, there are other, a plethora of grounds that the agency used to deny this withholding claim. And asylum was time-barred. So the board found that not only did the proposed social group of single women who oppose or are perceived to oppose gangs, and that they are unable or unwilling to make extortion payments, was not legally cognizable. But that it had no nexus to a protected ground. That nexus finding also was never addressed by petitioners of the board, even though the immigration judge fully discussed it. So that also was not exhausted because it was not raised to the board. So now we know there's two more. So now there's corroboration and nexus, part of her prima facie case to demonstrate that she was persecuted on account of a protected ground. She never addressed the board. The board never addressed so that this court could review it. Moving on to the actual, whether or not this is a cognizable particular social group, the agency found that there was just insufficient evidence put forward to show that single women who oppose or are perceived to oppose gangs, and that they are unable or unwilling to make extortion payments, that it lacked immutable characteristics, particularity, or social distinction to show that this was a group that had clear benchmarks and that this was an immutable characteristic that she could not change or should not be permitted to change. Now, single women, she could become married. Although women, obviously her gender is immutable. However, her inability to pay or her not willingness to pay could be changed. So it is not immutable. The group is not sufficiently particular, the agency found, because it lacked clear benchmarks for determining who's in the group. Obviously, Salvadoran people, their ideas of who is unable or what actually constitutes inability to pay, given how many people the background country reports show, are actually subject to extortion by the gangs. Salvadoran may not agree on what level of opposition needs to be required, what actually constitutes opposition, what is the actual extortion. So that's not a sufficiently particular group. And as far as social distinction, there has been zero evidence put forward that as a society, El Salvador, people in El Salvador, view this particular social group as a distinct group. Meaning that there's no evidence in the record to show that single women who oppose or are not able to pay extortion demands are a distinct group within that society, given how widespread extortion is in that society. Moving on to a relocation issue, just very briefly. Even if a petitioner can show all the other elements, and this court sustains her claim on all the other elements, regardless of jurisdiction, she has to show that she could not relocate within her own country. Now, I know, Judge Gregory, you expressed concerns about what kind of person could move once that threat is given. The threat, the actual threat, factual threat was not that she needed to pay, and then if she didn't pay, they would come back and rape her daughter. No, that was not, there was no linkage to the extortion demand. The rape which happened three weeks after the extortion demand was never connected. She never said that I identified the same man who made the extortion demand as the same man who raped me. She never said he made any statements whatsoever referencing the prior threat to link the two. Instead, what he said was, if she told anyone about the attack, the police or anybody else, then he would come back and attack her daughter. So, what this criminal was actually worried about is not that she not pay, not that this was retaliation for her not paying, but that he would be found out for the crime of rape. That's what the threat was about. And then it actually shows that she was able to successfully relocate to her parents' house, which was three hours away, and lived there with no harm, no threat of harm, and no member of her family was harmed, including her sister that actually owned the store where the extortion demand was made. And to this day, there is no evidence whatsoever that any member of her family has been harmed in El Salvador due to the failure to pay the extortion demand. Finally, the two issues, torture convention. Petitioner did not demonstrate a key element of what torture convention requires, which is that the burden she has is that when she would be returned, she would be tortured by or at the instigation or with the consent or acquiescence of a public official or other person acting in official capacity. Now, the agency also made another one, another finding, which was never addressed, which is that the threat of actual torture is very low. And that is because when asked, directly asked, do you fear harm when you go back? She said she didn't know. No member of her family has been harmed, and she was not committed because there has been no ongoing threat. No one's come to her family members to say looking for her or threatening her. So she cannot, other than speculate, indicate that she is subject to some kind of threat of torture. As a cat claim, do you concede that she has evidence of past persecution? You think rape is persecution? Yeah, I mean, you are. Yes, rape is definitely persecution, but it's not necessarily torture, which is what we're talking about. So the persecutions for asylum withholding torture is specifically defined the regulation of something else other than persecution. So rape is not torture. Well, I'm just saying that the act of race would be women. Did you say that you said rape is not torture? What I'm saying is I'm trying to find for you the terms of the statute. I want to make sure you said you said rape is not torture. If I did so, I misspoke. But what I am trying to say, Your Honor, is I said it may not be. Persecution and torture are two different things under the statute. So that's what I'm asking. Rape is torture, isn't it? Whether or not it's a prior act of torture, she has to show that more likely than not, she'll be tortured in the future. Now, what evidence? Is that credible fear when somebody rapes you and says, listen, I'm coming back for your daughter? Your Honor, credible fear is not the standard. The standard in terms of fear of torture, correct? The standard is that she has to show that it's more likely than not, the clear probability that she would be tortured if returned to her home country. So, again, I think you're trying to skate it. You don't believe rape is torture, do you? I, okay. Because you keep saying that. Is that right? No, no, no. Rape, on the record, I'm saying rape can certainly constitute torture, Your Honor. Okay, all right. Okay, as a prior. So she has had past persecution in terms of torture as a cat claim, right? She's had past. It's happened to her, correct? Yeah, and it could be an indication of whether or not she'll be tortured in the future, certainly as a factor. Is that a presumption for that it may happen in the future at all? No, there's no such presumption under the cat regulation. Okay, all right. Okay, there are factors, including past torture. That is a factor to be considered. One of the factors, the person who committed the torture is the gang. One of the factors is how widespread the risk of torture is. And the fact that the person who tortured her is in the gang. We don't know what gang. We don't know how widespread this gang is. We don't know if the person who tortured her was in the gang. Let's say how widespread gang violence is in the country. You want to have everything in your way just to say that this person does not get relief. Oh, yeah, well, yeah, it says that, but which gang was it? It's replete with the country reports in terms of how widespread it is. It's replete. This is not someone where this was someone they had a familiar relationship with before, or ex-boyfriend, or isolated situation that led to this rape. This was a situation that was clearly gang, and that's undisputed in this record. It's not that clear, Your Honor. What's not clear? It is not clear that she was raped by a gang member. There is no evidence she was raped by a gang member. She said she couldn't identify him, and it was not the same person that threatened her. She could not say that. That's why it's called gang because there tend to be more than one person in them? Your Honor, maybe, but we're speculating now. We're in the realm of speculation as to what happened. I'm trying to discuss what the evidence is. The evidence here is what she testified. We've had in terms of people being threatened. Go ahead, go ahead. Your Honor, you know, I submit, Your Honor, rape is torture. It absolutely is. Whether or not it rises to the level of future torture, it's an indication. She might be future tortured back home, but since there's no ongoing threat, the gang is not looking for her. And in this case, there was a reference to a future rape, correct? There was a reference. Her daughter. Your Honor, if she spoke to anyone about the rape, the person threatened to rape her daughter. Well, in her returning to the country, isn't that logically, it makes common sense that that's more of a chance that she may be identified and implicated in that rape? It would have to be, wouldn't it? Oh, that's the person raped. They're back in the country. Wouldn't that, just common sense, increase that risk that they would be found out? I mean, I don't know. I don't know. There's a lot of contingencies there, Your Honor, and that's a lot of speculation. I suppose it's like you rape somebody and they later on, two years later, move next to you or into your town. You don't think that there will be a likelihood that you may eventually come, somehow find some, the courage to say what happened to them, and you may have to answer to some call of justice. You don't think that's common sense, that that increases that risk? I don't know, Your Honor. Okay. I don't. All right. Okay. I can only discuss what's in the oven. So last issue here, Your Honor, is the motion to remand. Part of the brief that was filed with the board had a motion to remand based on a filing that petitioners made with the USCIS. It was a form, I-360, that indicated that an application for special juvenile, immigrant juvenile status had been filed with the agency, but the only thing filed with the board as proof was a notification saying we had a notice of filing. Not the actual application, not the required court order, which would serve as the substance, or any other evidence for that motion. So the board, in this case, said you did not meet prima facie eligibility for remand because you didn't show that you're prima facie eligible for this kind of relief. Is a motion to remand treated like a motion to reopen? Is that right? Well, Your Honor, no. They actually treated it, they wanted a delay. They wanted to allow time to basically go back to the immigration judge to allow time for the USCIS to adjudicate the application for special juvenile, immigrant status. So the requirement that the application be attached to the motion, that requirement does not apply to a motion to remand? It only applies to motions to reopen? Yeah, typically courts do treat motions to remand just like motions to reopen. That was Judge Rushing's question in the first place, I thought. Maybe I was confusing in how he asked it. I'm sorry. I thought motions to reopen, sorry, motions to remand are treated like motions to reopen when the basis is I want to pursue this other new relief. And there's a regulation that requires those motions to be accompanied by the appropriate application for relief. That's correct, Your Honor. All that is correct. And that applies here? Yes, Your Honor. Because what the board did is it said, we cannot grant your motion because you don't meet paramethasia requirements for showing that you're actually eligible for the relief that you say you're eligible for. It's, again, speculation that you would be eligible for this. So the board did not engage in any fact-finding. It has been alleged in the petitioner's brief that the board had engaged in unlawful fact-finding. What the board did was actually just assess the substance of the motion, whether or not the paramethasia requirements were met for the special juvenile immigrant status, and said no, it was not met. So there was no actual fact-finding in the board's decision. So just to conclude, Your Honors, it is the government's position that this entire case can be disposed of on a dismissal, subject to only the court's ruling on torture convention and the motion to remand. Because the withholding and asylum are not before the court because the vast majority of those issues are barred by either statute or the exhaustion requirements. Subject to the court's questions. That concludes my argument. Thank you, Counsel. Thank you, Your Honor. Ms. Busey, you have some time reserved. Thank you again, Your Honors. Okay, so due to limited time, I want to just go ahead and stray into the PSG argument. Here, the PSG was single women who oppose or are perceived to oppose gangs and that they are unable or unwilling to make extortion payments. So the first prong that we have to meet to satisfy a valid PSG is a mutable characteristic. The mutable characteristics here are women, as the government pointed out. That's something that you cannot change or should not be forced to change. And then also shared past experiences. The fact that they've opposed gangs, that is a past experience cannot be changed. So that prong has, in my opinion, been easily satisfied. And that was one prong that the immigration judge said was not satisfied. The second prong is social distinction and then define with particularity. I say those together in the same sentence because they kind of go hand in hand. Particularity states that you have to be able to define the people, clearly define and set a benchmark for who fits in that group. And then social distinction typically is backed up by evidence, typically in immigration proceedings, country conditions, in that the PSG has to be socially distinct within the community in question, so in El Salvador. According to United Nations High Commissioner for Refugees, in areas where criminal activity is widespread and law enforcement is incapable of protecting people from gang violence, a person expressing opposition to gangs will often stand out from the rest of the community. That's administrative record 424 in the pre-hearing statement that was submitted prior to the merits hearing. And that statement right there goes to particularity and social distinction. So for the immigration judge and also the BIA to say that there was, that the PSG was valid or invalid was just completely in error. There was reports submitted directly on point to satisfy the particularity and social distinction requirements, yet they said that they didn't even get immutable. The immigration judge said that the PSG wasn't even that and yet clearly is. And it does meet the second prongs of particularity and social distinction in the country condition reports. Because in El Salvador, in a country that the government's not stable, you can't rely on the police to help you. You can tell, and also it's rampant with gang violence, that's evidence in country condition reports, you can tell very clearly the people who are with the gangs versus the people who are not with the gangs. The people with the gangs aren't really harmed. They live in impunity. And the people that go against the gangs... On a different topic, were you able to find a JA site or a record site to where corroboration was raised by a petitioner in her brief to the BIA? It was administrative record, I have, 4 in the last paragraph. Administrative record, 4 in the last paragraph. Thank you. You're welcome, Judge Thacker. Okay, and then there were a couple other points that I wanted to address as to the PSG. Sorry, I don't want to hold you up, but you say that's where the petitioner raised it in her brief? What Judge Thacker just asked? Yeah. That's where it's in the BIA decision. I'm asking for where, thank you, Judge Rushing, where petitioner raised it in her brief so that it is not, so that we have jurisdiction. Okay, Your Honor, let me just find that then real quickly. There was a place where it was... Administrative record 26, Judge Thacker. 26. Yeah, sorry for that confusion. I apologize. But going back to the PSG, something that the government mentioned is that all of her family is in El Salvador, however many family members she has, and none of them have been harmed or threatened. That is correct, and that's because none of them were victims to rape. And none of them were threatened on the onset. So it stands to reason that they're being untouched right now because they're not the issue in question here. They weren't raped. Her sister was not raped. Her family was not raped, nor were they approached by the gang even. So they're not part of this particular social group. So bringing up that issue doesn't make sense because it's not relevant. The issue is her, the petitioner, Maria here. And does she belong into this particular social group? And was she raped on account of her membership in a particular social group? And she indeed was. She refused to pay the extortion demands. Now, I hear what the government has to say in that when the guy did come back and rape her, he said, if you tell this to the police, then I'll come back and rape your daughter. But it's important to note that she was raped in the very spot that she was threatened two to three weeks prior. So that is a nexus, that there is the relation there that that was the same person and that it all relates back to her refusing to pay the extortion demands that they wanted. It is clear there. And she did testify in court that it was, she believes, MS-13. And she believes that it was the same gang member, but she didn't see them because, one, they were behind her and they had some sort of stalking mask over their head. So, Your Honors, I see I'm running out of time. Do you have anything additional to say about the cat claim? The cat claim, Your Honor. So the standard there is that it's more likely than not that you will be tortured if you are returned to the country. I mean, to address the government's argument, the Attorney General's argument, my cat claim. Okay, so... I mean, that's what rebuttal is. I mean, do you want to... Just briefly, Your Honor, I disagree with that decision. At minimum, cat should have been granted here because it was established that she was raped. That is a form of torture. Undoubtedly and unquestionably, that is a form of torture. And then on top of that, couple that with the threat of, a future threat of her daughter being raped. That is enough to establish that it's more likely than not that she or her daughter will be harmed if they returned. And then on top of that, the country conditions support that. And I know that one of the elements for a cat is that you have to be able to, or the burden for the government is that they can easily relocate to another place. But that was discussed earlier that there's no other place in El Salvador that she can just safely relocate to and live a peaceful life without the threat or living in fear that her daughter might be raped one day. The gangs are everywhere, whether it's the same gang member that raped her or a different member entirely. Somebody can come and do that to her again or to her daughter. So to say that there isn't even a cat claim at minimum here, that is an abuse of discretion, Your Honors. And that is a horrible finding and a horrible precedent for the judges, the immigration judge, and the Board of Appeals to set. And for both agencies, the immigration judge and the board, to agree and to find that same conclusion is just, it's outrageous to even think of, Your Honors. If there's no further questions, Your Honors, I just want to say thank you. And the conclusion is that I think the decision should be vacated and remanded for a rehearing. Thank you, Your Honors. Thank you both for your arguments. We can't come down and shake your hands, but we very much appreciate your arguments here today on these very important cases. I wish you well and stay safe. And we'll ask the clerk to adjourn the court. Sunny Dye. This court stands adjourned. Sunny Dye. God save the United States and this honorable court.
judges: Roger L. Gregory, Stephanie D. Thacker, Allison J. Rushing